BLACK, ADM'X *v.* AINSWORTH.

5-3496                                                    388 S. W. 2d 3

Opinion delivered March 15, 1965.

*Shaver, Tackett & Jones,* for appellant.

*Dennis K. Williams, Larey & Larey,* for appellee.

PAUL WARD, Associate Justice. This case involves a joint bank account. The money belonged to Mrs. J. S. Ainsworth and was deposited in her name and the name of her daughter-in-law. The question for decision is: At the death of Mrs. Ainsworth does the money belong to the daughter-in-law or to the estate of the deceased? The essential facts which gave rise to this litigation are hereafter summarized.

Mrs. J. S. Ainsworth's husband was a railroad man who retired on a pension. After his death in 1938 the

pension was paid monthly to his wife. Mrs. J. S. Ainsworth died on August 24, 1962. We may hereafter refer to her as the deceased. She was survived by five sons and daughters. The deceased lived in her own home with her son (C. R. Ainsworth) and his wife Viola from 1936 until she sold her home in 1948. After that she lived with C. R. and Viola in their home until her death.

On March 19, 1936 Mrs. J. S. Ainsworth made a deposit of $510 in The State National Bank of Texarkana in an account designated

"Mrs. J. R. Ainsworth, Sr. and Mrs. Viola S. Ainsworth or either of them or the survivor"

—as shown by the original bank book, introduced into the record as Exhibit "2". This book reveals numerous deposits and withdrawals up to February 10, 1949 when it showed a balance of $3,537.02. Exhibit No. "1", introduced in the record, is an original bank book with the same bank, showing the same joint account. In this book the first deposit dated January 28, 1950 shows the above mentioned balance ($3,537.02) plus $35.45—designated as interest—or the sum of $3,572.47. This book also reveals numerous deposits and withdrawals until the account was closed on January 2, 1963, showing a withdrawal in the amount of $6,783.64. It is admitted that Viola Ainsworth withdrew the money and claims it as her own by virtue of the joint account heretofore mentioned.

On May 8, 1963, one of the deceased's daughters (Mrs. J. K. Black) as administratrix of her mother's estate filed suit in chancery court against C. R. Ainsworth (a son of the deceased) and his wife Viola to require them to turn over to her (as administratrix) "all of the money, property, and effects left by Mrs. J. S. Ainsworth at the time of her death." It is conceded that the deceased left no property except the aforementioned joint bank account. Admittedly this sole question is properly presented: Does the joint bank account belong to the deceased's estate or to Viola Ainsworth?

The above question was presented to the trial court

on the facts above set out, on certain exhibits, and on testimony of witnesses presented only by the administratrix. In ruling against the administratrix (appellant herein) the trial court, in a memorandum opinion, found that the joint account agreement was properly signed by the deceased and Viola Ainsworth; that thereupon title to the money in said account vested in Viola; and, that there is "no substantial evidence in the record" to show the deceased intended for said money to be distributed among her children.

After a careful study of the record, the able arguments, and the pertinent authorities, we conclude the trial court is right and that its findings are in accord with the weight of the evidence. In many respects the case of *Von Tungeln* v. *Chapman*, 233 Ark. 219, 343 S. W. 2d 782, is similar to the one here under consideration both as to the facts and the law. In that case we said:

"Reviewing the evidence on trial *de novo* here, we find the record utterly bare of evidence to overcome the *prima facie* intent which we hold the signature card creates as to the existence of a joint tenancy."
Although, as pointed out by this Court in the above cited case, there was testimony that Mrs. Reed (who stood in the position of Viola here) did give some of the money to certain heirs, and although the deceased indicated at one time she wanted a certain daughter to have some money, yet, we said this:

"We find such testimony insufficient to overcome the clear intention expressed on the signature card and the savings certificates both of which are made out to Mrs. N. C. Chapman or Mrs. Bertha Reed. The signature card, which is signed by both Mrs. Chapman and Mrs. Reed, declares an intent to create a joint account."
In the case under consideration there cannot be the slightest doubt a *prima facie* case is established showing it was the intent of the deceased and Viola to form a joint account with the right of survivorship. Each deposit book (Exhibits "1" and "2") contains a section 5 which reads:

"If any account is opened in the name of two persons, payable to either or the survivor, either person may, during his life, on production of the pass-book, draw the whole or any part of the moneys in said account, and at the death of either, the sum remaining in such account shall be the sole property, absolutely, of the survivor, and be subject to his or her order as herein provided for all other depositors."

Not only so, but the signature card (dated March 19, 1936) signed by "Mrs. J. S. Ainsworth and Mrs. Viola S. Ainsworth" contains this language:

"We agree each with the other, and with the State National Bank of Terarkana, Ark., that all sums heretofore or hereafter deposited by said depositors or either of them, with said Bank, to their credit as such joint depositors, shall be owned by them jointly, with right of survivorship and be subject to the check or order, or receipt of either of them or the survivor of them . . ."

It would serve no useful purpose, we believe, to set out at length the testimony in order to show there was no sufficient evidence to overcome this clear *prima facie* case. The essence of Mrs. Black's testimony was that she did see the "book" but didn't see Viola's name on it, but she admitted that she didn't pay much attention to it and didn't examine it carefully. Viola, who was called as a witness by appellant, asserted emphatically she understood the money was to go to the survivor. She did admit that on occasions she had offered to divide some of the money with the other children (as was done in the Von Tungeln case) but this could well be interpreted to mean she owned the money and had a right to do as she pleased with it.

In fairness to all it must be pointed out that this litigation is not the sordid picture of greedy children putting the love of money over and above love and respect for their mother—it is nothing more than a legitimate attempt to solve a legal problem. The record is replete with evidence that some of the children wanted nothing; that some wanted Viola to have it all regardless

of the legal aspect; that Mrs. Black (appellant) visited and attended her mother twice a day, and washed her clothes for two or three years and wanted no pay for it, and that she thought Viola had done a wonderful job taking care of Mrs. Ainsworth (her mother-in-law) in her home for more than a dozen years.

In view of the conclusion we have reached it is unnecessary to discuss other questions raised by appellant.

Finding no error, the decree of the trial court is affirmed.

Affirmed.